the audible, the judges of the United States Court of Appeals for the Fourth Circuit. All right, good afternoon, everybody. Oh, yeah, Miss Walls. Yeah. You may proceed. Thank you, Your Honor. Chief Judge Gregory and honorable judges. My name is Leslie Rawls, and I'm appearing today on behalf of the defendant appellant, Dennis Sturdivant. Because Mr. Sturdivant's retained trial attorney failed to provide him with effective assistance of counsel, he was sentenced to almost 10 years longer than he would have faced if he had been comparably sentenced in the appropriate guideline range. The record before this court shows that both prongs of Strickland are satisfied that it shows deficient performance by counsel so serious that he was not functioning as counsel under the Sixth Amendment, and it shows that the errors were so serious they deprived him of a fair hearing. With respect to the deficient performance, Mr. Sturdivant was sentenced as a career offender. The record before this court shows that before federal sentencing, trial counsel was aware of a potential problem with the state sentence that was used to place him in career offender status. That sentence was later set aside as illegal under North Carolina law, but counsel already knew about it and did not take the steps to investigate it that would have protected his client's rights. The pre-sentence report is the key to showing counsel's awareness of the illegal sentence and its possible impact on Mr. Sturdivant. Yes? Counsel, can I stop you there? Why do we have to look at the pre-sentence report? What's wrong with the part where counsel actually lodged a written objection saying, I think this state sentence is incorrect? Um, that's where I was going, Your Honor, because that's exactly what we need to look at. Because the pre-sentence report shows that the state sentence was counted as points for sentencing, but then counted in career offender for criminal history category and to place him in career level as well. So it shows that, and then in his response, which is on page 170 of the joint appendix, it's the second objection, trial counsel said in respect to the illegal state sentence, the defense is investigating this conviction and whether the sentence was improperly enhanced. The defense has requested documentation from the clerk's office and will provide an update if there are issues with this conviction. So that part of the record shows that he was aware there was an issue with the conviction. And then at sentencing, he actually withdrew the objection, and this is on page 78 of the joint appendix. Do we know whether he consented to it? There's nothing in the record to indicate whether he consented to the withdrawal of the objection. One of the problems with that objection was that it only went to the points being added for criminal history category, and the objection, as well as its withdrawal, completely ignored the fact that that sentence was being used to bring him into career offender status. So counsel was providing deficient performance by not addressing the issue of career offender status or investigating that sentence in a way that would have let him know that it was an illegal sentence. And it was corrected by the Mecklenburg County State Court a short time after this. It was several weeks after this, just a few months, as I recall. That actually occurred without no evidence was presented, and the prosecutor and the defense both agreed that it was an illegal sentence. And that sentence, originally the sentence, the illegal sentence, and I'm using the language of the state court, not my words. State court called it illegal. That sentence was originally over 12 months, 12 months and up. When it was corrected to be a legal sentence, it became 10 to 12 months, and that meant that it was no longer a qualifying sentence for career offender enhancement. So it had a significant impact. When counsel was... And what's the importance of the significant impact? I don't think this is really something you briefed. You know, there are two parts to ineffective assistance, the ineffectiveness of the assistance and then the prejudice. Yes, ma'am. So the deficiency was knowing about the issue, which we know the counsel was aware of it. The harm that was caused, do I understand that that's your question? What was the harm? I want you to talk about the prejudice, yes, because I didn't think it was briefed. Okay. The prejudice caused by the error. Yes. The prejudice that was caused by the error was that because counsel failed to investigate what turned out to be an illegal sentence and represent his client in the federal sentencing to let the court know that this was not a sentence that should have been considered for career offender status, his criminal history category went from category four to category six. His base level went from 23 to 31. And that increase, the 31 points, the original higher base offense level was in part the result of the government withdrawing its section 851 motion, which was part of our notice, which was part of the plea agreement. So the base offense level went from 23 to 31 because of the illegal sentence. So he's got an increased criminal history category. He's got an increased base offense level. And the result of that was that the advisory guideline range went from a range of 70 to 87 months. It became a range of 188 to 235 months. Now, in Glover versus the United States, which was included in the brief, the Supreme Court said that an increase, when a sentence was increased, an amount that was at least six months and as much as 21 months, that that showed harm based on counsel's failure to argue sentencing issues. This time we're talking about an 118 month increase on the low end and 148 month increase on the high end. So you're talking about a minimum increase of almost 10 years out of this man's life because of trial counsel's conduct. The record in this case contained the request for relief that was filed in the North Carolina court. I'm sorry, I didn't hear you. Does the record in this case contain a copy of the request for relief filed in North Carolina State Court? No, Your Honor, it does not. Have you ever seen it? Do you have access to it? I do have access to it. And my understanding was that because it was not a court order, it was not necessarily appropriate for judicial notice by this court. But if the court deems it necessary to see that document, I can certainly submit a copy of it after the oral argument if the court directs me to. Well, is it contrary to what you've been arguing to us? Not at all. Okay. Not at all. I only omitted it from the order itself was contained in the appendix to my brief, not in the joint appendix or the addendum to the brief. And my understanding of matters for judicial notice was the reason that I did not include the motion itself. Okay. So I think, I guess my question is whether the court would like me to address more on the question of counsel's failures or on the harm or whether I have covered it well enough, or if you have any more questions on those two areas, the major prongs of Strickland. Just to clarify, could you just tell me what was the deficient performance in this case? Failure to investigate. Is that what you think the deficient performance was? Not the withdrawal of the objection and the telling the judge that none of this makes any difference to the guidelines range? Those things I think show deficient performance, but the failure to investigate is the deficient performance that primarily caused harm. The things that you just mentioned show a lack of understanding. But I guess I don't understand if you have the motion and we do have the motion, what failure to investigate? He knew everything he needed to know about the claim. He filed the motion a couple of days later. He obviously investigated it. I just, I guess I'm not understanding why, how did he fail to investigate the claim as to which he filed a motion several days after the sentencing in this case? It seems like he investigated it thoroughly enough to know he needed to file a motion and get relief, which he did. I'm just not understanding where you're pointing for your deficient performance. So to represent his client effectively in accordance with the Sixth Amendment, when he knows that there is an illegal sentence that is significantly, and even a small amount, but significantly in this case, then he would have the duty to investigate that. Now the fact that he, I was not aware you had a copy of the motion. Yeah, I did not submit that to the court. No, I know you didn't, but it's a, you know, it's a legal filing. I think we're allowed to at least look at it. Okay, well that was my, I'm not aware that you have it, so that was what I was offering earlier. Why don't we jump to the end of Judge Harris's question? Okay, so he did investigate, right? He did investigate. I'm not sure what the timing of the investigation was. Once he investigated and knew there was an issue with that for a continuance. So why isn't that the deficient, I'm sorry, so why isn't the deficient performance the part where he withdraws the objection, assures the judge that other objection I raised, which you may be concerned about, don't worry about it, it won't change the guidelines range in this case, warns the judge off paying any attention to the problem, and fails to either object or ask for an extension. Why are you talking about the failure to investigate? Why isn't that the failure? So I don't know, your honor, I don't know the timing of the investigation. Okay, but just let's leave investigation for a moment. Are there other failures? The failure to ask for a continuance, which I did mention in the brief. Well what about wrapping, what about telling the judge that this didn't matter? That, that is a failure on the part of counsel as well. I mean there are many places where counsel failed to protect his client's interest, including that on the record as I see it, a failure to investigate. As I said in my brief, often if you have several reasons for something, you say them all, not just one. Because if you put your all your eggs in one basket and that isn't right, then you may lose. You have all these other eggs out there, you could flip the basket. Yes ma'am, and I did, the brief does argue that it was an error on the part of counsel failing to make a motion to continue so that he could investigate and take care of this. One thing I want to make clear though, I've got, I see my the clock's running down, I am not asking the court to make a general broad ruling that when an attorney is aware of a collateral matter that he's got a duty to go out and take care of that. But in this circumstance, that's what counsel did. So he failed to take care of his client's interest by asking for a motion to continue, asking for a continuance based on the information that he had before him, by failing to notify the court and be straightforward and honest with the court that this is a serious issue. That it raised his exposure significantly. Counsel, counsel, I can't speak for my my dear friends and colleagues, Judge Moss and Judge Harris, but I think the query is is like you see when you're making it harder for yourself, it's more difficult to show that not requesting a continuance because he would say, well how do you know you've gotten the continuance? And then the question, but here he's just saying that, forget about the query I made, it doesn't matter because it wouldn't make any difference. He's getting the law wrong. That's the, that's the biggest part of the problem, isn't it? Getting the law wrong. Absolutely. And an investigation part is of no moment because he really did investigate. He just gave up on for no reason. I can tell from the record why he would. So I think that's it. So, but all of these things you do say constitute in the performance, correct? Yes, sir. Right, okay. All right, Judge Moss, Judge Harris? Nothing more. All right. No, thank you. You deserve some time as well, but Ms. Ray, let me hear from you. Yes, your honor. Thank you, Amy Ray for the United States. Your honors, I would just begin by saying that I haven't seen the motion. I don't think it's a part of this record and I was not even aware of who filed the motion or when it was filed. And I will also note that we don't know, assuming I'm gathering it was Mr. Heroy, and we don't know when he found out got the actual records. If that motion was filed within days of the sentencing hearing, he may not have gotten them. He may not have actually been aware that there was a sentencing issue until two days after the hearing, one day after the hearing, one hour after the hearing. We have to have a hearing so that Mr. Heroy has the opportunity to explain why he didn't tell the counsel. Sorry. Can I ask you why we need the hearing? Because I totally understand that in your usual case, you want a hearing so the lawyer can explain what happened, but here he already told the judge, he said, I'm withdrawing my objection. And the reason is because even if you won't grant, even if you grant it, even if for some reason, he's not a career offender, that won't make any difference. And so he can't say something at the hearing that's inconsistent with what he already put on the record. So what do we need the hearing for? Because, Your Honor, even if he makes a statement, and first of all, I don't know why he would say that. First of all, I don't even know what objection he was referring to, but let's assume he's referring to that one. Even if that's correct, we can't show prejudice. They can't show prejudice unless they can show that there would have been a consequence that would have followed from his decision not to withdraw the objection. Now, if he did not know until hours, days, or even a couple of weeks after the hearing, and he has no duty to go to state court and file a motion for appropriate relief for his client. He has no duty to do that. No federal defense attorney has the duty. They don't even ordinarily, I would suggest, have the duty to look behind a state court judgment. Mr. Haroi provided exceptional assistance of counsel if he ultimately found that there was a problem and went and got it vacated. And perhaps Mr. Sturdivant is going to have some way of taking advantage of that. I don't know that he can in this case. But if he did, if he failed, they have to show not only deficient representation, but also prejudice. They have to show a reasonable probability of a different result. If he had stood up there and said, Your Honor, I'm not going to withdraw this objection, but I don't have the records right now. And even if I had the records, we don't have a state court. That state court judgment was in effect. This court's decision in Bacon, I think that was a 1996 decision, makes very clear that a federal lawyer... Am I speaking too loudly? I'm sorry. I think I'm in a courtroom. Okay. Thank you. Sorry. Bacon makes clear that there is no response, that a defense attorney cannot collaterally challenge a state court conviction. And that when a district court is assessing whether or not a defendant is a career offender, the court has to defer to a state court judgment. At the time that Mr. Sturdivant was sentenced, that state court judgment was alive and valid. The district court did not have any opportunity at that moment, under any circumstances, not to respect that judgment and therefore not to classify him as a career offender. Well, you know why he didn't have a reason to do so? Because the lawyer told him he didn't need to. Your Honor, he couldn't have, even if the lawyer had said something else. Bacon makes clear the district court... Correct. You mean tell me that the court couldn't have given him a continue? Are you saying the court couldn't have? Right. I did not say that. I'm sorry. You say he couldn't have done anything. Your Honor, what I mean by that is, if he went forward with the sentencing, first of all, you could move for continuance. Let's say Mr. Heroy moved for continuance. Let's suggest that that's the deficient representation. Well, then the question is, what did he actually have that day? Do we know? Do we know what he had at the moment that he stood up before Judge Whitney and said, I'm going to withdraw these objections? We don't know. And it's not fair. This court has made very clear that it's not fair to hold a defense attorney, to hold that a defense attorney has provided constitutionally deficient representation unless the defense attorney has the opportunity to explain his actions. Well, Ms. Gray, this gets you known as a remand, right? Well, I mean, no. There has to be a legal, with all due respect, there has to be legal error for this court to remand. There has to be legal error on the part of the judge. I thought your argument was we couldn't tell from this record. I thought that's what you've been saying. It is, but here's the problem. The ineffective assistance of counsel, he's named one error, and that's ineffective assistance of counsel. This court can't remand unless it finds conclusive on the face of this record that there was ineffective assistance of counsel, both deficient representation and a reasonable probability of a different result. What happens, and what always happens, is a 20th guess, Judge. I'm sorry. I thought your whole argument was we just don't know. I mean, I don't think you, knowing our long experience, I don't think if what the petitioner is saying here actually happened, you would be in front of us saying that there was no ineffective assistance and no prejudice. I thought your whole argument, and not a bad one, was we don't know. Right. So, Your Honor, the method, the vehicle for us to concede that issue is in a 2255 when there can be an evidentiary hearing, and we would. If Mr. Haroi were to stand up and provide testimony that we agreed, illustrated, demonstrated ineffective assistance, both deficient representation and a reasonable probability of a different result, you bet we would concede. We've done it before, and we would do it again. But you can't remand. This court, with all due respect, has to actually find, in order to remand, that there has been constitutionally deficient representation. And I would respectfully suggest that the defendant has not and cannot meet his burden to meet both those prongs on direct appeal. I mean, that is the whole purpose of this court's decisions over and over again, not to decide IAC claims on direct appeal. Yes, Judge Harris. So, I think usually, I just, I really do want to make sure I'm tracking your argument. Usually, we think of the hearing on habeas more to explore the deficiency prong. But you're suggesting that what we really needed for here is to explore the prejudice prong, to figure out what the judge would have said if the trial counsel had asked for an extension? Your Honor, we explore both prongs in an evidentiary hearing regularly. And I would say that it's both prongs that have to be explored here. So, let's say this. Let's say, for example, that Mr. Haroi found out two hours after Mr. Sertovic was sentenced, he got those state court records that apparently showed that, and it was an apprendee error, right? It was an apprendee error. And Mr. Haroi found out two hours after the sentencing hearing was completed. Then we know that while he may have made a misstatement of law on the record about whether or not his objection would have impacted the defendant's guideline range, that may not have been deficient representation in the sense of, yes, Judge Harris. And I guess that's my question. How is that not deficient representation? He knows there's a possible problem because he's lodged the written objection. Let's assume, heroically, I guess, that he gets the records two hours after the sentencing. Why wasn't it a mistake to stand up at sentencing and instead of saying, I haven't gotten the records yet, I'm going to need another five days, instead to say, I'll just withdraw the objection because it doesn't make any difference. So let's assume that he got a call from a clerk that told him that those records either didn't exist or that they said something they didn't say. We don't know. Well, then why didn't he say that to the judge? Why didn't he say, I'm withdrawing the objection because good news, I just got a phone call from the clerk and incorrectly, she told me or he told me there are no records. Your Honor, I don't know except that when he filed the written objections, it's really not clear. He sort of says, I'm going to investigate this, but there's really, and he says, I'm going to report back to the court if there's a problem. So my assumption from what he said at the sentencing hearing, and I don't know if it's correct, we have to hear from Mr. Heroy, is that he didn't believe at that moment. I mean, he is actually quite a lawyer to even go behind the judgment. And so I, what he understood at that moment, was that, I mean, can I say it was deficient representation or a mistake to say that had that objection been well-founded, it wouldn't have affected the guideline range? I'll concede that absolutely, yes, that's true. And if we, I'm thinking of deficient representation as sort of constitutionally deficient representation of a magnitude that's serious. And defense lawyers can make mistakes on the record all the time, and I can too about a particular guideline range. And if it doesn't matter, I think of it as a small mistake, but let's say it mattered. So it's deficient representation. We still don't have a reasonable probability that he can show a different result when we don't know exactly when he got that information. And you can say that this court, we can all speculate that he may have gotten information from the clerk's office that was wrong, that led him to believe that those records did not exist. And I will say in all of our Simmons litigation, of course, we have had to run down a ton of district court, of state court records. And sometimes you do get the wrong information and later find out that the records exist. What do you do when you later find out that it's wrong? What do you do? Sure. We take care of it, Judge Gregory, and he may have done that too. He may have found out the next day. Yes, I'm sorry. You may have been 10 years or almost more in prison, 10 years. Yes. And the government uses that record, women uses part of that state record for the enhancement, correct? That predicate was one of the two career offender predicates. I suppose that the government wouldn't do that if it had known that that was incorrect. I know that. Oh, no, absolutely. We wouldn't have done that. Yes, Your Honor. I know that. That's no doubt in my mind. So the point is, we've been 10 years, and it's beyond any perventure at all that that would be the result legally. So why wouldn't we given that at this point, I know normally it has to be on the face of the record before we deal with IAC type things, but here, why wouldn't we address it? I mean, it's just, like I said, what Judge Harris said, he had plenty of opportunity to say, I just don't know. But when he said pointedly, and I think it'd be different than saying, I thought about the problem that I raised, even if I was wrong, that it wouldn't make any difference. So it's almost like saying, even if he's a career offender, what I've raised wouldn't change his sentence. That's just wrong. It is wrong, Judge Gregory. But the reason that this court cannot simply ignore the requirement that it be conclusive on the face of the record is because as this court has to have committed, to have provided constitutionally deficient representation without hearing from them, unless we are absolutely certain. So that statement may have been wrong, but we don't know whether or not it affected the defendant's sentence ultimately, because we don't know when he actually got the information that showed that there was an error. And I will say- Okay. Counsel, can I, I just want to, I really want to clarify. I just want to understand which is the hypothetical where you think it wasn't deficient. It's that, is it, if he, is it that he got incorrect information from the clerk's office before the sentence, based on that, he withdrew the objection, except what he said was a different reason, but maybe he had two reasons for withdrawing the objection. Is that the scenario? So is it the incorrect information from the clerk's office, or do you also think it wasn't deficient if he hadn't heard back? But instead of saying, I raised this objection, I haven't heard back, I'm going to need more time. Instead of saying that, he said, it won't make any difference. Which of those scenarios did you think was non-deficient? Your Honor, I don't think that, I will say this, with all due respect, it doesn't matter. Let's assume both were deficient. Let's assume both were deficient. We still don't have a reasonable probability of a different result because we don't know when he was able to establish that the defendant had received a sentence that was wrong. And if he did not learn that until later, if he did not know at that moment, then the fact that he didn't ask for a continuance, or the fact that he didn't say, this objection really would have mattered, but we don't know that it would have made a lick of difference. Isn't there a reasonable likelihood that if he had said, look, I'm waiting to hear back from this court, I have a real problem, that the district court would have granted a continuance? And how are we going to establish that at a hearing? Well, first of all, let's say that he got the wrong information. We have to include that as a possibility. So if that was a possibility, then, and this is the whole point, we're imagining what might have happened, and we can't do that. That's not this court's rubble on a shift appeal. Counsel, but just to be clear, so the scenario that you want us to rest on is he did get information from the clerk's office. It was incorrect information. Instead of saying, based on the information I got from the clerk's office, I don't have an objection. Instead, he said this legally incorrect thing about it won't make a difference. And then after the sentencing hearing, the clerk's office got back to him and said, sorry, the stuff we sent you before was wrong. Here's the right information. Based on the likelihood that that's what happened, you want us to deny relief. What I would like this court to do is apply the law. The law says it has to be conclusive. You have to be able to look at this. I'm sorry. Could you answer though directly Judge Harris's question? Yeah. I don't think that's the only scenario. That's one I posit as a possible scenario of why he did what he did or why the fact that he said this wouldn't have affected his guideline range would not have ultimately prejudiced Mr. Sturdivant. That's one possible scenario. Is there another one? I think that the other, I mean, I think there are in, I don't know what happened. We don't know what happened. Even if that's the only scenario I can imagine at this very moment under this pressure, I would say that that is enough. That is more than enough because this court says it has to be conclusive. Conclusive means no doubt. That's what that means. And I will say that the United about this sentence and we do, we have talked with Mr. Sturdivant's counsel and we have looked at this and considered what we could do. At this point, here we are at oral argument. The only thing I can tell this court is that the only possible correct legal decision is to let Mr. come into court, swear to an oath, take an oath and tell us what happened. And if he tells us information that demonstrates that he would knew, that he could have known, that he should have known. But I also want this court to consider the possibility that what this actually means in terms of a federal defense attorney and state court collateral proceedings. Because that's what it actually required for Mr. Sturdivant not to be classified as a career offender. And this doesn't ordinarily happen with the speed in which I guess Mr. Heroy managed to make it happen. That's not normal. So I'm not at all sure that Judge Whitney would have granted a continuance in this situation. MARs can take years and years. But just, can I ask you this question? So I think I followed all of your argument about we should let the defense lawyer tell us what he did, why he did it, what he knew when. But if he should have testimony that would be favorable to the petitioner or to the defendant here, then we still don't grant relief because the district would have to psych out what the district judge would do with it? I didn't think that was the law. It is the law in effective assistance of counsel claims, Your Honor. It is absolutely the law that it is not customizable. We get testimony from the district judge? No, I don't mean testimony from the district judge. But that's why it happens in the district court. The district court can say in response to a 2255 that there's no reasonable likely probability that I would have granted this and therefore he hasn't shown that. But I thought you were saying but. And this is just supposing. This doesn't mean you lose the case here. But supposing everything that he is positive comes true, can, could a district judge, a reasonable judge, say there's no reasonable possibility I would get in a different sentence? It seems to me to be almost impossible to say that. Oh, with all due respect, I think a district judge can, in the context of a 2255 proceeding, explain what that record for what he did do, which we do. I'm sorry. I'm, I'm assuming that we're in a context in which the district court is hearing testimony from Mr. Heroy about what he did and what he did not do. And then it shows that he was ineffective. We're just hypothesizing. So if, so I guess ineffective in the sense of deficient representation or ineffective in the sense of different deficient representation and reasonable probability. Because ineffective has both prongs. So I just want to clarify. To be sure. But I thought what you were doing was holding out the possibility that no matter what the defendant here came up with, the district judge could say, well, doesn't make any difference to me. I don't like the way that I look. And I'm going to give him this upgrade in sentence. No, Your Honor. And, and by the way, I don't, with all, I don't think any district judge would sentence me. I don't either. That's why I don't have to go through that step. That's why I was puzzled. I see that my, I see that my time is up. I know, I've kept you. I mean, no, no, that's okay. I do want to, may I just, I do want to just respond to that. The reason we go through the exercise is to give the defense attorney the opportunity to explain. To, to explain what he knew when, because we don't know that on this record. To explain why he took the steps he took when he took them. The rather extraordinary step of filing a motion for appropriate relief, if that's in fact what happened. And I would request that this court, you know, recognize what is in the record and what is not in the record. You know, I'm having this case here and I appreciate your argument. I understand what you're saying. But, but in this case, what you're saying is that we need to give counsel an opportunity to explain what he did. We know what he did. We know what he said. But it seems to me it's bereft of any real consideration. On the other side of that statement is this. We know that now he should never have been sentenced as a career offender. It doesn't matter when he knew that or what in terms of justice, whether he knew it five days later, 50 days later, whatever, we know as a matter of fact that he shouldn't have been. When justice requires some level of fixing a wrong that nobody wants, you just said, and I agree with, I know it. I know the fine work you do in the Western District of North Carolina and that work, no one, you wouldn't represent that. You wouldn't do that. And as Judge Mott said, can't think of a judge who would say, I don't care if he's not a career offender, I'm still going to give him 10 years more. I can't fathom that. This is not a case where it's in the soup if we find out what facts alone, and it could somehow cabinet. Well, we know now counsel didn't do anything wrong. He wasn't deficient. Fine. But we know on the other side of that globe is that the man should never have been sentenced. Not that you were wrong. No, you know, the court was wrong, but that's the truth of the justice of this case. And that's why I'm having a hard time in that. It seems like you're not getting on the other side of that at all. It's just totally, well, there's a way that he doesn't get relief. If we find that the lawyer comes up with something that's like, you know, consistent with a hypothetical or whatever, whatever. No, the hypothetical is not the question. It's the reality of justice of 10 more years that you should have gotten. These sentences are already draconian. I don't mean draconian in terms of the judge's intent. I understand. It's hard. But another 10 years, well, you know, he didn't say, like Simon says, kids play. Oh, you moved, but you didn't say may I, so you got to go back. Your Honor, there has to be a legal avenue for relief. There has to be. We live in a world of laws that determine whether or not there are errors that occur. This wasn't an error. He was sentenced properly when he was sentenced. And so the question is, does he have an avenue for relief now? If he has an ineffective assistance of counsel claim, the answer is absolutely he has an avenue. And the judge will have to make a credibility determination if Mr. Roy testifies. He'll have to decide whether or not what Mr. Roy testifies to makes sense or not. But this court can't craft an after the fact solution to an error that never occurred in the district court. We're reviewing, you're reviewing, with all due respect, Judge Whitney's conduct and decision to impose a sentence that was entirely lawful when it was imposed and is still lawful. I am sorry for Mr. Sturdivant. And we reached out and we have tried and made an effort off the record. So I don't want to go too far into that, although I will be happy to if the court wants to hear it. And we made significant concessions to Mr. Sturdivant in the process of this case. And I would just very quickly say that we withdrew in 851. We agreed to a way below guideline sentence in terms of the SRV. We didn't even recommend that it be run consecutively. Mr. Sturdivant has already served a 190-month sentence in district court only to have his supervised release revoked, only to be back. I am sorry that he, that this state, that theoretically he's now could have, if the timing had been different, received a different sentence, I suppose. But his sentence is fully lawful and just. And it was when it was imposed. It doesn't make up a way to create justice when none exists. Judge Harris. Can I ask you a question? Because I just wasn't sure about this. So if there had not been, I mean, I know his plea bargain included the saying, even if he could appeal this sentence, he would lose. Because the sentence is. He would. Yes. Yes. Because his sentence was lawful when it was imposed. It remains a lawfully imposed sentence. And his avenue for relief is to, is to file a 2255 motion to vacate. And we have offered other avenues for relief, but this is his current avenue for relief. He can file a motion to vacate. Based on ineffective assistance, he couldn't file. Could he file a 2255 just based on the simple fact that his sentence is incorrect? No. Right. Your Honor. It's not. And you can't. Okay. I meant in the colloquial sense, like we all now know he's right. Okay. Just colloquially incorrect. That won't work either on direct appeal or on habeas. Okay. No, Your Honor. It would not. And, but it, I just really think it's important to impress upon the court that it was a lawful sentence. It is a lawful sentence. And this court has over and over and over again said that unless the record demonstrates both deficient representation and prejudice, then this, then that claim cannot be considered on direct appeal. And a remand is not appropriate because you're, the court is reviewing the sentence, which is lawful. Your Honors, if you have no further questions, thank you. We request that this court affirm the judgment of the district court. All right. Ms. Rowe. Yes, Your Honor. I just want to respond to a couple of things. The government said that this court is being asked to review Judge Whitney's sentence. And that's not what you're being asked to review. So it wasn't a question of whether Judge Whitney properly sentenced or not. This is all about the attorney's conduct. I don't want to get into the discussions about negotiations to settle this. I know that Ms. Wray chose to do this. I will only say that the we were unable to reach an agreement in part because the offer was still significantly higher than the guideline range to which he would be if his attorney had done his job right. The other thing I want to mention is that Ms. Wray talked about how remarkable it is that Mr. Heroy went and filed a motion for appropriate relief in the state court. A couple of things on that. He was a retained attorney. So we're not asking attorneys to do a lot more than they might do other than what they're contractually agreed to do with their client. I also said in my first portion of the argument, and I want to make this point again, we are absolutely not asking this court to create a duty for attorneys retained or appointed to go and investigate collateral matters. So I'm not asking for a broad ruling, just that on these facts, the ineffective assistance of counsel is shown and both prongs of Strickland were satisfied. I think it's important to note that as it shows in the state court order, he'd already served the entire state court sentence. There was absolutely no benefit to setting that state court sentence aside or reducing it to under 12 months, 10 to 12 months. There was no benefit other than to remove the career offender status. So I just want to mention that. Yes, I agree. He had no duty to file a motion for appropriate relief. That was one of the points I wanted to respond to. We're not asking for that. I don't think I have anything else to add unless the court has questions. All right. Ross, were you a court appointed? I'm court appointed, your honor. I wanted to note that thank you so much for your service. The court depends on lawyers like yourself to assist us in these cases, and I'll let you know we appreciate it. Ms. Bray, of course, we acknowledge and appreciate your able representation in the United States. Thank you, your honor. We can't do come down and greet you as we would love to do, but know that our sentiments and our heartfelt appreciation is just as strong as we will. Thank you, and be safe and well to both of you. And with that, we will proceed to our next case. Thank you, counsel. Thank you, your honors. Appreciate it.
judges: Roger L. Gregory, Diana Gribbon Motz, Pamela A. Harris